Morning. Our first case today, number 2012-3134, Barber v. the Army. Mr. Poindexter, you may begin. Good morning. May it please the Court. My name is John Poindexter. I'm here today and in my first time in the Court to argue on behalf of Anthony Barber. We are here to ask that this Court set aside the administrative law judge's decision to affirm Mr. Barber's removal from the Federal Service. We make this request because his removal was arbitrary and capricious and having been obtained without procedure required by the law. We ask that Mr. Barber be returned to his previously held position within the Department of the Army. Just a little background. Mr. Barber is a 20-year retired veteran of the U.S. Army. Upon leaving the military, he continued his service to his country as a civilian employee. This all came to a crashing end in the fall of 2010. We know the facts, Mr. Poindexter. You're right, but was he at Fort Meade for six years? He was approximately six years, Your Honor. And how were his performance reviews during this time? Let me first ask, are they part of the record? His performance reviews are part of the record, Your Honor. Because I didn't see them discussed in the Douglas Factor discussion below, so I was curious how his performance reviews were. I think he was described as an above average performer. I think there's one line in the Actually, Mr. Moeller, the investigating officer and the deciding official, described him as an asset to the service. What would you say is your strongest argument in favor of reversal? You have a number of issues you've raised in your brief, from notice to the severity of the penalty is disproportionate to the offense. What would you say is your strongest argument? Your Honor, I believe it's the procedurally defective notice. I believe that Mr. Barber was set at a severe disadvantage, also the investigators, and to some extent the administrative judge. Because Mr. Barber was accused of downloading and accessing pornography on his computer on two occasions. This was written in the charging statement by his supervisor. Two dates. There's a May 2009 date and a June 2010 date. Was it the actual charge of misuse of government property? Yes, Your Honor, but misuse and specifically misuse through downloading and accessing pornography on his computer. And there was one short video. Approximately 76 seconds. There's no evidence that the video was ever viewed. But it was clearly on his computer. There's no doubt about that, correct? Your Honor, Mr. Barber was told that the video was found on his computer, yes. But wasn't it in fact, admittedly there was a problem with the earliest date, but they found both downloading and accessing on the 9th of June, did they not? Your Honor, one of the agency's witnesses explained that in fact the file was, there are file properties. This is metadata associated with any kind of file. There's an access date, a created on date, and a modified date. Now I've never even thought about this until I started working on this case. But apparently when the modified date is earlier than the created on date and access date, the modified date does not speak to anything or any action that was performed on that computer with that video. But even if those earlier dates don't matter, even if the only date that is of any consequence is June 9th? 2010, yes, Your Honor. Then the question becomes, well who had access on that date? The argument being that other people other than Mr. Barber had access, one other person anyway. We believe that there was another person that had access to the computer. That's not to say that Mr. Barber is saying that someone else did it. I think that's become a big part of this case. If Mr. Barber didn't do it intentionally, then someone else did it intentionally. But then there is a credibility determination made by the administrative judge. How are we to overturn that? Because the credibility determination, she's required to make a credibility determination. However, her credibility determination, if you read her initial decision, Your Honor, is still based on, and it's described by the agencies as lingering confusion. A lot of people are confused about it. But in her analysis, she still goes back to the two dates analysis. She says, and if you like I can read it, she says, because Mr. Barber was still the only person there on the two dates, I doubt, I do not believe him. It doesn't make sense that anyone else could have done it because he was still the only person there on the two dates. But it's true that at least one of the other people identified was not there on the June 9th date. Yes, Your Honor. This was a person by the name of Tony Parker. Ms. Parker left that office. However, Ms. Parker is, I believe, a valuable witness because Ms. Parker says that she saw her co-worker storing and accessing Mr. Barber's computer. If you read Ms. Parker's letter, Ms. Parker actually sent a letter during the early investigation to the deciding official and also presented herself, came as a witness during the initial hearing. So is it your position that if the ALJ's credibility defining was in any way based on a misstatement of fact or a misunderstanding of fact, that we have to send it back under reconsideration? Yes, Your Honor. At least, at a minimum. I mean, let's start off on an equal footing for Mr. Barber. Mr. Barber had to rack his brain, so to speak, trying to figure out what happened on two dates. Now, some people, it would appear that the government has changed their position a bit to say that it doesn't really matter. Mr. Barber, it's still the fact that he stored the file on his computer, but we disagree. Mr. Barber had to simply explain a single act, a single incident, the fact that the file sat on the computer for four months untouched. That may change his strategy altogether. Well, untouched is not part of the record. You began by saying the record doesn't say or has no evidence as to whether the file was viewed or was not viewed. The file was not viewed. Wait. Is there evidence in the record that the file was not viewed, or is there simply no evidence about whether it was or was not viewed? Your Honor, the tech gentleman, Mr. Jamesino, said that there's no evidence that the file was viewed. In fact, because the created date and the access date are the same, and this is on the screenshot that was given, because they are the same, it suggests that that file was never opened. It only suggests that that date is constant. Well, it could have been opened on that day. The day it was created, it could have been opened, and then the created date and the access date would be identical. I didn't see any evidence in the record of the IT specialist indicating that it affirmatively was not opened. I didn't see anything that said that. Your Honor, you're right, but he also did not suggest that it was opened. I agree. That's what my question was. Is this an instance where there is actually evidence that it affirmatively was not opened, or is this an instance where there isn't proof either way? Our reading is that it was never – I guess my understanding is that the file was placed on the hard drive, on Mr. Barber's computer, and that was it. How do you get around the fact, though, that there were actual factual findings that said that, based on the testimony, it was clear that it could not have been done by accident? It had to have been an intentional download. Well, if that's the case, then Mr. Barber should be – intent then becomes an element of the charges against Mr. Barber. Well, even if intent's not an element, what I'm saying is that whether it was opened or not, it was affirmatively accessed. Well, the only – the person in the record, Terry Isbell, is the person that made the decision to – or decided that the file was intentionally placed there. However, in the initial hearing, Mr. Isbell was not allowed to be brought in as a witness. All right. Do you want to go to – do you want to go to the issue of the Douglas factors? Yes, Your Honor. We believe that all these facts are related. The Douglas factor analysis requires that mitigating factors such as lack of intent or proof of intent, single incident versus multiple incidents, the fact that it was a directive by a supervisor to store the password. In fact, computer security had been compromised due to a lack of funding on the base. We feel that all these are mitigating factors that were not considered by the deciding official. In fact, they were ignored. If you look in the deciding official's letter, which is required to be very clear about what they take into consideration, these things are not even discussed. So if intent is mentioned in the Douglas factors, then who bears the burden of establishing the presence or absence of intent? The charging. Even if it's a mitigating factor? I would imagine so, Your Honor. I mean, this – it would appear that the investigating officer and the deciding official wanted to know if this was an intentional act. He believed it was. He said, I know that he intentionally did it. Now, if he intentionally did it and Mr. Barber's penalty was removal, what would his penalty have been had he not intentionally done it? Had it been an act, an lapse, an error? It was carelessness on Mr. Barber's behalf. And this is how the file was downloaded. I think that it's – I think that it's very important that intent – the official, the charge – I mean, the investigating officer and deciding official was well – was – wanted to know – did all the investigations to find out if this was an intentional act. I think that goes back to the two dates. That goes back to him ruling out certain witnesses because they weren't there. You focus a lot on this issue of intent can be a mitigating factor. And there's a debate over whether intent's an element of the charge versus a mitigating factor under the Douglas factors. I think your argument on the latter is stronger. But even if that's the case, Mr. Barber never said, yes, I accidentally opened the wrong site. I was intending to plug in something else and I accidentally opened it and it just downloaded, which, while you argue that that's possible, he didn't argue that below. He – we argued that it's – there are a lot of possible scenarios. Mr. Barber insisted that he never intentionally downloaded. But he didn't – he didn't argue that he accidentally did it either, did he? He just said he never did it. He said he never did it. Because it has nothing to do with him. So how does the fact that it wasn't intentional matter if his position is that I didn't do it? Well, I think that what happens is if you – I guess if the – if intent is part of the charges, then it's that if you – if the accusation is that he intentionally did it, then the burden is now on the agency to prove that he intentionally did it. They raise – they raise the stakes in this by saying you intentionally did this. You're moving into your rebuttal time. Do you want to save it? I do want to save it, Your Honor. Okay. Why don't we hear from the government now? Mr. Breskin. May it please the Court. I'd like to start by looking in the Respondent's Appendix at page 14, which is the initial decision by the administrative judge. Mr. Barber's counsel characterized the credibility determinations made by the administrative judge as having been entirely dependent upon the existence of these two dates related to the file. If you look at Respondent's Appendix 14, the first paragraph discusses Mrs. Cooper's testimony and explains that Mrs. Cooper's testimony in which she denied downloading pornography was consistent with statements that she had provided earlier and explains why the testimony that was given and why the administrative judge believed her testimony. There's no mention of either of those dates in that paragraph. The second paragraph discusses Tony Parker's testimony, again discussing her testimony before the administrative judge. It does not mention either of the dates. Although there is a mention on RA 14 to the two dates, it's clear that the administrative judge was simply noting evidence that was put forth, but the credibility determinations were not based upon whether or not Mrs. Cooper was present on the May 2009 date. That's really the only question that turns on that earlier date because Mrs. Parker was present on that earlier date. So the question of whether or not Mrs. Cooper is to be believed by the administrative judge here was not dependent on whether or not she was present on the May 2009 date. It was simply that her testimony was believed, her statements were consistent with her testimony, and the administrative judge credited that testimony. Does the charge of misuse of a government computer require some showing of an affirmative act, i.e. intent? It does not, Your Honor. There's actually a line of MSPB case law holding that the charge of misuse of government computer does not involve the element of intent. Here the charge is simply misuse. It involves the intent in terms of you intended to commit whatever act you committed. Like misuse of government computer, if I accidentally spill coffee on this computer, I'm not going to be charged with misuse because I wasn't intending to spill coffee, right? So it involves knowingly committing the act you did, not necessarily intending to violate a law, but knowingly committing the act, doesn't it? Well, Mr. Barber is responsible for the actions that are taken when his CAC card and his PIN are entered. To the extent that he permitted in any way this file, this explicit file, to end up on his computer, he's responsible for the fact that that file is stored on his government computer. But you used the word permitted. You're going right back to the notion of intent. Are you saying that if he was in Tahiti and someone else broke into his office and downloaded that file, that he would be liable for misuse of government property? He could be charged for misuse of government property because he signed a computer user agreement in 2007, which he knowingly became responsible for anything that happens when his CAC card, his CAC card, and his PIN are entered into the computer. So he could not be in Tahiti without having given someone access to his security card and his PIN to have access to his computer profile. And so the act of giving someone else access to your computer profile and allowing them to download whatever they want makes him responsible for the fact that in his computer profile was stored an explicit file that he was not authorized to have. Well, if the sheer presence of that file on his computer was sufficient, why all the fuss over the testimony as to who had access and who did what, when, where, and how? Because that was the defense that was put up by Mr. Barber. That was the way he went about trying to explain to the deciding official how he believed the file ended up on his computer. In the end, the administrative judge and the deciding official, the factual determinations were you had this file on the computer, you conceded that, you did not have authorization to do so. The deciding official did testify before the administrative judge that he believed Mr. Barber intentionally put the file on his computer, but that was not an element of the charge. But even if we agree that this misuse of government computers, the approach of the government is as draconian as you say it is with respect to that charge, you can't dispute that the Douglas factors specifically say that whether or not it's intentional is something that is actually supposed to be affirmatively considered by the decision maker in determining the punishment. Isn't that right? It can be considered. Are you suggesting that the AJ has the authority to disregard one of the 14 Douglas factors? Not disregard, but to the extent that the charge here did not require the agency to prove intent. The charge doesn't require the agency to talk about the number of years that someone has in service, but the Douglas factors certainly do. So I don't understand.  Are the ones that are necessarily linked in a sense of elements of a crime to the charge being asserted? No, not necessarily, Your Honor. What I mean is that there was evidence here, circumstantial evidence that Mr. Barber intentionally committed this act, and his story on the other side was that he did not do it. Now, intent can be both a mitigating or an aggravating factor. I agree, the administrative judge did not discuss whether or not he intentionally did this, but I think the reason that she did not discuss that was because the specification underneath of the charge simply was storing this file, and if you look at the… Yes, but as Judge O'Malley pointed out, and you should answer her question, and I realize I interjected, which is why you didn't, but shouldn't she have had to consider the intentionality aspect as part of the punishment assessment? And if she were to conclude that while it seems like it couldn't get there by any means other than Mr. Barber, I kind of believe him that it seems like he didn't intend to do it. Maybe somehow this was accidentally downloaded. She could have reached that conclusion. That would have been consistent with everything in the evidence, and had she done that analysis, maybe then she would have concluded that firing isn't the right penalty here. He needs to be more careful, so there's an appropriate penalty, but firing isn't it. The analysis here also took into account, I think we can't look at this misconduct in a vacuum, because this was his second offense of misuse of government computer, and the third incident in which he misused his government computer within about a two-and-a-half-year time span. The first incident had the same similar hallmarks to this. He sent out an email with explicit photographs attached to it. He sent an email with some Halloween costumes. They were probably silly. Maybe it was a maid with a short skirt and high heels and fishnet stockings. I mean, yes, he shouldn't have done it. It was stupid, but it's not the same thing as looking at porn on your computer. Totally different crimes. Well, I respectfully disagree with your characterization of the emails, only because I've seen them and they're not simply silly Halloween costumes. And they were serious enough that his supervisor felt he needed to be counseled. Are they in the record? They are not in the record, Your Honor. And isn't it true that those emails, he was forwarding something that had been sent to him by someone else in the agency? That is what the record demonstrates, that he claimed that he was forwarding something else that he received. And is it also true that the person that originated the email or sent it to him in the first place was not disciplined? The only evidence in the record related to that is his letter to Mr. Moore in which he says that that person was not disciplined for sending that email. But I guess I just want to go back. If we were to conclude that the A.J. did not properly analyze all of the Douglas factors, regardless of whether the A.J. properly analyzed the ones about repeat offense or other things, if we were to conclude that the A.J. erred as a matter of law by not analyzing all of the factors, having failed to address intentionality, wouldn't that be a basis to vacate and remand for the A.J. to reconsider and do the proper analysis with all the factors? If the court were to determine that as a matter of law there was a failure to assess a necessary Douglas factor, it could be. But I think in this instance, the other Douglas factors, and there were 12 of them considered by the deciding official. I know, but this is the primary thing. His whole defense is based on, I didn't do this. I don't know how this thing got there. I don't know. I don't know how. I mean, that's the crux. That's like 95% of what he's arguing, and so it seems like that all goes to intentionality. I mean, whether he intended to do this. And so they might conclude ultimately you did it, whether you did it innocently, intentionally, or whatever, but that's the part that you need to hear the answer to. The problem is that was his story. I didn't do this. I had no idea how I got there, and the administrative judge did not believe him. She found that he was the one responsible for putting this on his computer because it was found. But she didn't find that he intentionally did it. That language doesn't exist anywhere. She did not say that he intentionally did it. How many of you ever downloaded something by accident? I have. But this wasn't, I mean, this had to be manually placed on his computer, and it wasn't hidden in some, you know, obviously you have files that you don't know are on a computer. This was in his documents folder. So this wasn't something where he, you know, opened an email and something downloaded. There was testimony that it had to be manually placed by somebody using his CAT card and his PIN into his computer, and it was placed into his documents folder. So the idea that he was surfing the web and went to some innocuous website and this just downloaded without him knowing it was, there was no evidence of that. It was disproved by the computer technician's testimony before the administrative judge. The testimony was that somebody intentionally put this file there, and he said, Well, it must have been Ms. Cooper. Hold on. Where did the IT specialist say someone intentionally did? I saw his testimony that said someone had to take affirmative acts to put it there, meaning someone had to click on something in order to make it happen. Right. I'm sorry. I clicked on all kinds of stuff and crazy things have happened to my computer, you know, that I didn't necessarily intend. Let me rephrase. It was purposely, somebody had to do something. It could not have just been accidentally put onto his computer by going to the wrong website or the wrong email. It couldn't have been downloaded through passive activity. Namely, you visit a website and suddenly it downloads without you having any clue at all. It probably had to have been something, Do you want to download? Yes or no. And you have to click yes or no. Or it could have been taken off a CD or DVD or some other medium that brought the file to the computer. So it wasn't necessarily that he went to a website and downloaded it. The testimony was that it wasn't clear exactly how it was transferred, where it was transferred to his documents folder, but that somebody manually did that and that that person had to have entered his CAC card into the computer and his PIN number. He said, well, it must have been either the computer technicians or Ms. Parker or Ms. Cooper and the administrative judge and Mr. Mueller. Just so I understand, because I don't fully. When you say that enter his PIN and his CAC, that is just to access the computer? That's just to sort of turn on functionality, right? To get into his profile. Okay. So it's not the case that, for example, to do the download, you have to go through all of those steps right then and there. Meaning, once I enter my password, I'm on Judge Moore's computer and I can come and go all day long on Judge Moore's computer and undertake action. I don't have to re-enter every time I want to download something, for example. My understanding is that the PIN lasts for 10 minutes and then it needs to be re-entered. 10 minutes during a period of inactivity, right? I'm not 100% sure. I mean, because that would be crazy. There's no way that this computer is set up so every 10 minutes he has to re-enter his PIN, even if he's sitting there typing. That seems not likely. I can't say one way or the other if it is. I know certainly my bank requires me to enter my password or my PIN if I have five minutes of inactivity on the website. So it is entirely possible. Certainly the Department of Army takes their computer security very seriously. Once you take your CAD card and the Department of Justice doesn't have that level of security so I don't know exactly how the card works. But my understanding is when you remove the card, it shuts down the entire computer. And so there are a series of serious computer security measures in place to prevent people from accessing somebody else's computer profile and doing what Mr. Barber alleges that the administrative assistant in his office did, one of whom wasn't working for the Army at that time. Well, he doesn't allege that they did it. He says other people had access to my computer and could have done it. I didn't understand Mr. Barber's testimony to actually accuse either of these ladies of having done so. Am I mistaken? Well, he specified who he believed could have done it because it was his testimony. Based on access. He said the following people have access to my card and PIN, including IT people, he said. I didn't take that as being, you know, that lady, that Miss Parker, boy, she's out to get me. I think she did it. I'm sure she did. She snuck in on the weekend and did it. There was nothing like that. Well, I think the strong suggestion from the I didn't do it but these people had my PIN number is that one of them must have done it because he identified specific people who he says he had given his PIN to and who had access to download this. And so the administrative judge, in coming to her determination, her factual question was did somebody else do this? Because, you know, it's difficult to prove intent as I think, you know, the questions we've talked about today show. And that's why circumstantial evidence of intent is sufficient in this case if intent is an element of the charge, which is our position it's not. But the factual question to be determined was whether or not Miss Cooper, Miss Parker, or the computer technicians, the people who Mr. Barber identified as having access to his computer, were the ones who downloaded this file to his computer and the administrative judge found that they did not do that and that Mr. Barber did. The standard of review here is quite deferential. And with respect to the penalty of dismissal, there was discussion by the deciding official of all of the Douglas factors. There was an analysis and a discussion by the administrative judge. So I think it's difficult for us to overturn. But the question is whether the determinations of the Douglas factors were reasonable or not. Many of the determinations as I read them were based upon the supervisor's so-called loss of trust. And we're talking about a, what is it, 70-second video. And somebody loses their job and has a real black mark on their record. Even if the standard of review is deferential, there comes a point sometimes when even a determination like this cannot withstand scrutiny. What's your reaction, particularly based upon the fact that it seems to me that most of the Douglas factor analysis turned on the so-called supervisor's loss of trust? I think the loss of trust needs to be seen in the fact that in December 2008, he sent out inappropriate emails and received a counseling statement. Then in 2009, he solicited people in his department using his government computer to purchase non-explicit videos from him as part of a side business. And then the next year, he was found to have this pornographic file on his computer. This is his second official offense of misuse of his government computer, the third incident in which he had misused his computer in a fairly short time frame. And so I think that that is the reason why Mr. Well, not really fairly short, fairly long period of time. And you're talking about years? Well, from December 2008, and the file was found on his computer in September 2010, three instances of misusing his government computer. Over a 26-year career with the federal government. Yeah. Well, he was a vet for 20 years. He worked for Fort Meade for five years and changed at this point. And the determination was that his past performance rating was at an NSPS level three valued performer. The level of review is whether or not the penalty removal is totally unwarranted. And the fact is that based on his past misuse of government computer, the fact that the Army takes very seriously storing pornographic material on your computer, that the deciding official found that, you know, he was the only one who could have been responsible for placing this on his computer, and that that was what Mr. Cullen, his supervisor, also had found, I think more than supports a determination that the penalty removal is not totally unreasonable in this case. The table of penalties for the Army permits removal for a first incident, a first misconduct of misusing your government computer. Here, that wasn't the case. This was his second official misuse of government computer. I think that more than supports the finding that the penalty removal is reasonable in this case. Thank you. Thank you, Mr. Breskin. Mr. Poindexter. Mr. Breskin went a little bit over, so I'm going to add a little extra time to your rebuttal. Thank you. I'd just like to reiterate. No one in Mr. Barber's office viewed pornography. No witnesses came forward to say, Mr. Barber sent me a pornographic video. Mr. Barber and I sat down and watched pornographic videos together. I walked in, and Mr. Barber's computer had a pornographic file playing. What you're saying is no one said that, right? No one said that. Okay, because the no one said it got divorced in time from the rest of your statements. I'm concerned. Okay. I'm sorry to think you were there. I was. Not a single person. Not a single person who worked with Mr. Barber ever suggested that. Even if that's the case, do you agree with the characterization of your friend on the other side who said that, I know you don't think he's your friend, but your opponent, who says that it was actually found in a file folder, so it had to have been downloaded and placed into a personal folder. Again, Your Honor, that may be the case. I'm not an expert on computer technology. I don't know where these files would end up if it wasn't downloaded intentionally. But again… But this goes to your whole intent issue. You were going back and forth between he didn't do it, but if he did, he didn't mean it. And the point here is that whoever did it, they had to have intended to put it in a file folder. Because of the folder that the file was downloaded? It doesn't accidentally. You have to identify a folder, right? But again, that may be true, Your Honor. But as Judge Moore said, maybe you clicked on something and you didn't know it was pornography. Maybe, like many of us, we end up on a website. For example, this may be dated, but there's whitehouse.gov and then there's whitehouse.com. Whitehouse.com is not proper workplace. Okay? We don't know that he intentionally did anything. And Mr. Barber was left believing that, in fact, he intentionally did something and did it twice. There's multiple occasions. He was told that something happened in May of 2009, and again, something happened with that file in June of 2010. Very misleading. And it doesn't allow Mr. Barber an opportunity to respond to these charges fairly. But even one instance would be enough to sustain the charge. I mean, even if there's only one proven instance. In fact, the A.J. clearly made mistakes with the 2009 date, the deciding official. And even the A.J. didn't properly explain it. But whether it's two or one is sort of irrelevant because the government is correct that even a single instance in 2010 of downloading would be sufficient to justify the charges. And again, if he spilled coffee on his computer, it would be misuse, Your Honor. And there's a difference between – I mean, I think this all goes to intent. Like the example you gave. If I spill coffee on my computer, it's misuse. If I take my coffee and intentionally pour the coffee on my computer, we have the same act. We have coffee being poured on the computer. I think we have to look at intent. Even if it's one instance, we have to do – Mr. Barber deserves more. A 20-year veteran in the Army, five good years in the Federal Service as a civilian. He deserves more than just being – he deserves a closer look. I guess I'm out of time. Thank you. Mr. Poindexter, the case is taken under submission. I thank both counsel for their arguments.